| AOC-105 | Doc. Code: CI | | Case No. **15 C I 04347** | |
|---|---|---|---|---|
| Rev. 1-07 | | | Court | ✓ Circuit ☐ District |
| Page 1 of 1 | | | | |
| Commonwealth of Kentucky | | | County | Jefferson |
| Court of Justice   www.courts.ky.gov | | | | |
| CR 4.02; CR Official Form 1 | | **CIVIL SUMMONS** | | |



**PLAINTIFF**

BETTY                                    BOVINET

JEFFERSON CIRCUIT COURT
DIVISION THIRTEEN (13)

**VS.**

**DEFENDANT**

DIVERSICARE HEALTHCARE SERVICES, INC.

**Service of Process Agent for Defendant:**

National Registered Agents, Inc.

160 Greentree Drive, Suite 101

| Dover | Delaware | 19904 |
|---|---|---|

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _____'AUG 2 1 2015'_____

DAVID L. NICHOLSON, CLERK

_____ Clerk

By: _____ D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this _____ day of _____, 2_____.

Served by: _____

_____ Title

| AOC-105<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice   www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | Doc. Code: CI | **CIVIL SUMMONS** | Case No. **15 C I 04347** |
|---|---|---|---|
| | | | Court   ☑ Circuit  ☐ District |
| | | | County   Jefferson |

**PLAINTIFF**

BETTY                                    BOVINET                JEFFERSON CIRCUIT COURT
                                                                DIVISION THIRTEEN (13)

**VS.**

**DEFENDANT**

DIVERSICARE OF SENECA PLACE, LLC

**Service of Process Agent for Defendant:**

CSC - Lawyers Incorporating Service Company

421 West Main Street

Frankfort                                          Kentucky          40601

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons.  **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date:   ʼAUG 2 1 2015ʼ          DAVID L. NICHOLSON, CLERK                    Clerk

By:   _____   D.C.

---

**Proof of Service**

This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:

_____

this _____ day of _____, 2_____.

Served by: _____

_____ Title

| AOC-105    '    * Doc. Code: CI<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice    www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | <br>**CIVIL SUMMONS** | Case No **15 CI 04347**<br>Court   ☑ Circuit   ☐ District<br>County   Jefferson |

**PLAINTIFF**

BETTY              BOVINET

JEFFERSON CIRCUIT COURT
DIVISION THIRTEEN (13)

**VS.**

**DEFENDANT**

DIVERSICARE MANAGEMENT SERVICES CO.

**Service of Process Agent for Defendant:**

CSC - Lawyers Incorporating Service Company

421 West Main Street

| Frankfort | Kentucky | 40601 |

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or** by **an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.

Date: _____ AUG 2 1 2015 _____

DAVID L. NICHOLSON, CLERK

By: _____ Clerk

_____ D.C.

<table>
<tr><td colspan="2" align="center"><strong>Proof of Service</strong></td></tr>
<tr><td colspan="2">This Summons was served by delivering a true copy and the Complaint (or other initiating document) to:</td></tr>
<tr><td colspan="2">_____</td></tr>
<tr><td>this _____ day of _____, 2_____.</td><td></td></tr>
<tr><td></td><td>Served by: _____</td></tr>
<tr><td></td><td>_____ Title</td></tr>
</table>

COMMONWEALTH OF KENTUCKY

CASE NO. **15 C I 0 4 3 4 7**

JEFFERSON CIRCUIT COURT
DIVISION NO.

BETTY BOVINET

PLAINTIFF

vs.

DIVERSICARE HEALTHCARE SERVICES, INC. *CM*

*Exhibit*

FILED IN CLERK'S OFFICE
DAVID L. NICHOLSON, CLERK

AUG 2 1 2015

BY

DEPUTY CLERK

Serve: National Registered Agents, Inc.
160 Greentree Drive, Suite 101
Dover, DE 19904

DIVERSICARE OF SENECA PLACE, LLC

Serve: CSC- Lawyers Incorporating Service Company
421 West Main Street
Frankfort, KY 40601 *CM*

JURY FEE PAID

DIVERSICARE MANAGEMENT SERVICES CO.

Serve: CSC- Lawyers Incorporating Service Company *CM*
421 West Main Street
Frankfort, KY 40601

DEFENDANTS

## COMPLAINT

Plaintiff, Betty Bovinet, by counsel, and for her Complaint against Diversicare Healthcare Services, Inc., ("Diversicare); Diversicare of Seneca Place, LLC ("Diversicare" or "nursing home"); and Diversicare Management Services Co. ("Diversicare" or "management services") states as follows:

1. At all relevant times herein, Betty Bovinet was and is a resident of Jefferson County, Kentucky.

2. Defendant Diversicare Healthcare Services, Inc. is incorporated under the laws of Delaware. At all times material to this action, Diversicare was authorized to do business in

Kentucky and to operate nursing homes in Kentucky. Diversicare owns and operates more than ten nursing homes in Kentucky. Upon information and belief, Diversicare was and remains a proprietary corporation engaged in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired and in need of nursing care and treatment, and is the parent corporation of Diversicare of Seneca Place. Diversicare exercised control over it and other Kentucky nursing homes and was the alter ego of Diversicare of Seneca Place and which is liable for Diversicare of Seneca Place's misconduct as well as its own independent misconduct.

3.      Defendant Diversicare of Seneca Place, LLC, is incorporated under the laws of Delaware, having its principal place of business in the Commonwealth of Kentucky. At all times material to this action, Diversicare of Seneca Place was the licensee and was authorized to do business in Kentucky and to operate a nursing home in Jefferson County, Kentucky. Diversicare of Seneca Place's principal place of business is in Jefferson County, Kentucky. Upon information and belief, Diversicare of Seneca Place was and remains a proprietary corporation engaged in the for-profit custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired and in need of nursing care and treatment, and is a wholly owned subsidiary of Diversicare Healthcare Services, Inc. which exercised control over it and was the parent company and alter ego of Diversicare of Seneca Place and which is liable for Diversicare of Seneca Place's misconduct as well as its own independent misconduct.

4.      Defendant Diversicare Management Services Co. is a management company that does business in Kentucky. Upon information and belief, the management company manages at least 11 nursing homes in Kentucky. At all times material to this action, Diversicare was doing business in Kentucky as a nursing home management company and provided services with and for Diversicare of Seneca Place pursuant to a management agreement assuming the liability

described and complained of herein.   Diversicare controlled the operation, planning, management, and quality control of the nursing facility in which Betty Bovinet was a resident and is responsible for any liability and damages flowing from Diversicare of Seneca Place's misconduct as well as for its own independent misconduct.   The authority exercised by Diversicare over the nursing facility included, but was not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedures used by the nursing home facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies established by the nursing facility.

5.     At all relevant times mentioned herein, the corporate and nursing home Defendants owned, operated, and controlled the nursing facility, either directly or through the agency of each other and other diverse subalterns, agents, subsidiaries, servants, or employees. The actions of these Defendants and each of their agents, subsidiaries, servants, and employees as set forth herein are imputed to each of these Defendants, jointly and severally.   All Defendants operate as a joint enterprise and as a result all are liable for the others' actions and inactions with regard to the operation of the nursing home.

**COUNT I**

6.     In 2013 Ms. Bovinet was a resident at Twinbrook Nursing Home.

7.     Upon information and belief, Diversicare is a national corporation that owns and operates more than 50 nursing homes all over the country, including more than 10 homes in Kentucky.  The corporation continues to acquire facilities and buildings to make more and more

money.  In 2014, the corporation's revenue grew to $93.7 million, an increase of 23.9% year-over-year.

8.     In July 2013, Diversicare bought the nursing home ("Twinbrook") in which Ms. Bovinet had lived for years.  Within three months of purchasing the nursing home, Diversicare presented all of the residents at the nursing home with Arbitration Agreements.  Diversicare presented the agreement to Ms. Bovinet's husband, Charles Bovinet ("Charlie").  Charlie believed that he had to sign the agreement so his wife could stay at the facility.  Absolutely no consideration was paid in the execution of this agreement.  Charlie was and is his wife's power of attorney.  However, the power of attorney does not give him the authority to enter into this agreement or any other agreement on behalf of his wife.  Diversicare's presenting and requesting that residents and/or their family member sign these agreements is fraudulent and oppressive.

9.     Diversicare was responsible for the care of Ms. Bovinet after it purchased the nursing home.  While under Diversicare's care, Ms. Bovinet developed a horrible pressure sore to her left heel.   The staff allowed the sore to become so bad that her leg had to be amputated.  In June 2015, the Office of the Inspector General issued a 15 page Statement of Deficiencies regarding the care at Diversicare.  A copy of the Statement of Deficiencies is attached hereto and incorporated by reference.  Among other things, the Office of the Inspector General found that Diversicare failed to provide necessary treatment and services to Ms. Bovinet and other residents.

10.     While under the care of Diversicare, Ms. Bovinet went to a physician for a consultation about her pressure sore.  A Diversicare employee accompanied Ms. Bovinet to the visit.  The Diversicare employee remained in the room during the examination and sent text messages on her smart phone regarding the consultation to employees at Diversicare.  Upon

4

information and belief, the Diversicare employee who sent the text messages was told to do so by management at the nursing home. Ms. Bovinet, through counsel, has repeatedly requested production of these text messages, but Diversicare has refused to produce these messages.

11. The Defendants actively sought residents with similar medical and nursing needs as Ms. Bovinet in order to fill their empty beds and increase their rate of occupancy and overall revenue.

12. In an effort to ensure that Ms. Bovinet and other residents were placed at the facility, Defendant Nursing Home Corporations held themselves out to the public at large as being:

      a)    skilled in the performance of nursing, rehabilitative, and other medical support services;

      b)    properly staffed, supervised, and equipped to meet the total needs of its nursing home residents;

      c)    able to specifically meet the total nursing home, medical, and physical therapy needs of its nursing home residents; and

      d)    compliant on a continual basis with all rules, regulations, and standards established for nursing homes.

13. Each of the Defendants failed to discharge their obligations to care for Ms. Bovinet. As a consequence of Defendants' failures, Ms. Bovinet continues to suffer tremendously. She had her leg cut off, among other things. As a consequence of Defendants' failures, Ms. Bovinet suffered injuries, extreme pain, suffering, and mental anguish. The scope and severity of the recurrent negligence and abuse inflicted on Ms. Bovinet while she was under the care of the Defendants has accelerated the deterioration of her health, physical condition and life.

14.   As a consequence of Defendants' failures, Ms. Bovinet suffered catastrophic injuries, extreme pain, suffering, mental anguish, and loss of her leg.

15.   Ms. Bovinet was repeatedly subjected to abuse and neglect, as more fully delineated below – including Diversicare's insistence that the arbitration agreement be signed - which resulted in loss of dignity and well-being, abandonment by staff, improper hygiene, and overall deterioration of body and mind.

16.   While under Defendants' care, Defendants, directly and through their agents, servants, employees, and/or ostensible agents, were negligent, grossly negligent, and/or acted with reckless disregard in their care for Ms. Bovinet, including but not limited to the following:

a.   Choosing not to adequately and competently assess Ms. Bovinet's personal and medical needs;

b.   Choosing to improperly care for Ms. Bovinet;

c.   Choosing not to provide a safe and secure environment;

d.   Choosing not to adequately and competently document Ms. Bovinet's condition;

e.   Choosing not to take steps to protect Ms. Bovinet;

f.   Choosing not to provide sufficient staffing of personnel to provide care and treatment;

g.   Choosing not to properly train and monitor the personnel who provided care for Ms. Bovinet and other similarly situated residents;

h.   Failure to adequately and competently assess and prevent decubitus ulcers, lesions, and sores and to provide competent and adequate medical care for such ulcers, lesions, and sores;

i.   Failure to assure and provide adequate turning and repositioning of Ms. Bovinet so as to prevent the formation and worsening of decubitus ulcers, lesions and sores on the body of Ms. Bovinet;

j.     Failure to provide and ensure that Ms. Bovinet received adequate skin care so as to prevent the formation and worsening of decubitus ulcers, lesions, and sores on her body;

k.     Failure to care for Ms. Bovinet in a manner and in an environment that promotes maintenance or enhancement of her quality of life;

l.     Failure to promote care for Ms. Bovinet in a manner and in an environment that maintains and enhances her dignity and respect in full recognition of her individuality;

m.     Failure to provide Ms. Bovinet the necessary nursing, medical and psychosocial services to attain and maintain the highest possible mental and physical functional status, as defined by the comprehensive assessment and plan of care;

n.     Failure to ensure that Ms. Bovinet not develop pressure sores;

o.     Failure to adequately promote healing, prevent infection and prevent new sores from developing;

p.     Choosing to violate Ms. Bovinet's privacy; and

q.     In additional respects.

17.     As a direct and proximate result of Defendants' failures to provide proper care to Ms. Bovinet, Defendants breached the applicable standards of care, and as a direct and proximate result of the aforementioned negligence, Ms. Bovinet was caused to sustain serious, permanent, and painful injuries to her body, and that said injuries caused Ms. Bovinet severe suffering of both body and mind, mental anguish, loss of enjoyment of life, and to incur medical expenses.

18.     The aforementioned damages are in excess of the limit necessary to invoke the jurisdiction of this Court, exclusive of costs and interest.

## COUNT II

19.     Plaintiff incorporates herein by reference the allegations contained in this Complaint.

20.     The acts and/or omissions of the Defendants were such major and significant deviations from accepted medical, nursing, and rehabilitation practice that they, in addition to negligence, constitute wanton, reckless disregard and/or grossly negligent conduct.  Such acts and/or omissions proximately caused or substantially contributed to Ms. Bovinet's injuries and loss of her leg and as such, give rise to and warrant the imposition by the jury of significant punitive damages against Defendants.

## COUNT III

21.     Plaintiff incorporates herein by reference the allegations contained in this Complaint.

22.     Defendant Nursing Home Corporations violated several state statutes and regulations, including but not limited to KRS 216.515, 902 KAR 20:300, 902 KAR 20:048, and 902 KAR 20:026.  Ms. Bovinet was in the class of persons who were intended to be protected by these statutes and regulations.  The harm that befell Ms. Bovinet while under the care of Defendants was the type of harm which the statutes and regulations were designed to prevent.

23.     As a direct and proximate result of Defendants' violations of state statutes and regulations, Ms. Bovinet was caused to sustain serious, permanent and painful injuries to her body, and that said injuries caused Ms. Bovinet severe suffering of both body and mind, mental anguish, loss of enjoyment of life, and to incur medical expenses.

## COUNT IV

24.     Plaintiff incorporates herein by reference the allegations contained in this Complaint.

25.     Ms. Bovinet was injured by the Defendant Nursing Home Corporations' violations of KRS 216.515, 902 KAR 20:300, 902 KAR 20:048, and 902 KAR 20:026 while she was a patient at the facilities.

26.     As a direct and proximate result of Defendants' violations of the rights provided to her by law, Ms. Bovinet was caused to sustain serious, permanent and painful injuries to her body, and that said injuries caused Ms. Bovinet severe suffering of both body and mind, mental anguish, loss of enjoyment of life, and to incur medical expenses.  She is thus entitled to damages pursuant to KRS 446.070.

**COUNT V**

27.     Plaintiff incorporates herein by reference the allegations contained in this Complaint.

28.     By accepting and continuing to care for Ms. Bovinet as a resident at the nursing facility, the Defendant Nursing Home Corporations agreed to render care and services for her benefit.  The Defendants assumed a fiduciary relationship with Ms. Bovinet whereby they owed her a duty of care and loyalty in providing, among other things, adequate living assistance, skilled nursing care, and skilled supervision.

29.     While under the Defendant Nursing Home Corporations' care, Defendants had a duty to act primarily for Ms. Bovinet's benefit.

30.     By asking that her husband sign an arbitration agreement after living at the home for so long and other actions, Defendants failed to discharge their obligations to Ms. Bovinet, causing financial losses as well as personal losses.

31.     Ms. Bovinet is, thus, entitled to recovery from Defendants for all remedies available to her for breach of fiduciary duty, said damages being in excess of the limit necessary to invoke the jurisdiction of this Court.

**WHEREFORE,** the Plaintiff respectfully requests the following:

1.     A trial by jury on all issues so triable;

2.     That Betty Bovinet recover compensatory and/or statutory damages from the Defendants, including but not limited to pain and suffering and medical expenses, in such amount as the trier of fact shall deem just and reasonable;

3.     That Ms. Bovinet recover punitive damages from the Defendants in an amount or amounts determined by the trier of fact;

4.     That Ms. Bovinet be awarded all appropriate costs, attorneys' fees, and interest authorized by law on the judgments which enter in her behalf;

5.     That the Court enter other such relief as is deemed just and proper.


This the 21 day of August, 2015.


Martha Marie Eastman
Eastman Law Office, P.S.C.
3721 Taylorsville Road
Louisville, KY 40220
502-456-1331 Phone
502-454-5393 Fax
COUNSEL FOR BETTY BOVINET

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 185456 | B. WING _____ | C 06/05/2015 |

NAME OF PROVIDER OR SUPPLIER

DIVERSICARE OF SENECA PLACE

STREET ADDRESS, CITY, STATE, ZIP CODE
3526 DUTCHMANS LANE
LOUISVILLE, KY 40205

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 000 | INITIAL COMMENTS | F 000 | | |
| | An Abbreviated Survey was initiated on 06/04/15 and concluded on 06/05/15 to investigated KY23337 and KY23338. The Division of Health Care unsubstantiated KY23338 and substantiated KY23337 with deficiencies cited. | | | |
| F 279 SS=D | 483.20(d), 483.20(k)(1) DEVELOP COMPREHENSIVE CARE PLANS | F 279 | | |
| | A facility must use the results of the assessment to develop, review and revise the resident's comprehensive plan of care. | | | |
| | The facility must develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing, and mental and psychosocial needs that are identified in the comprehensive assessment. | | | |
| | The care plan must describe the services that are to be furnished to attain or maintain the resident's highest practicable physical, mental, and psychosocial well-being as required under §483.25; and any services that would otherwise be required under §483.25 but are not provided due to the resident's exercise of rights under §483.10, including the right to refuse treatment under §483.10(b)(4). | | | |
| | This REQUIREMENT is not met as evidenced by: Based on interview and record review, it was determined the facility failed to revise two (2) care plans for Resident #2 and Resident #4 out of the seven (7) sampled residents. Resident #2 and Resident #4 had problems for the potential for | | | |

LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE                    TITLE                    (X6) DATE

X_____          X_____          a_____

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficent protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: HJMN11          Facility ID: 100256          If continuation sheet Page 1 of 15

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 185456 | A. BUILDING _____ <br> B. WING _____ | C <br> 06/05/2015 |

NAME OF PROVIDER OR SUPPLIER

DIVERSICARE OF SENECA PLACE

STREET ADDRESS, CITY, STATE, ZIP CODE
3526 DUTCHMANS LANE
LOUISVILLE, KY 40205

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 279 | Continued From page 1 <br><br> impaired skin integrity, however the care plan was not revised after the development of a pressure ulcer. <br><br> The findings included: <br><br> Review of the facility's Care System Guidelines, not dated, revealed when an open area was identified a plan of care should be initiated and individual interventions for each problem should be implemented. Those interventions should also be placed on the Certified Nursing Assistant (CNA) care card. <br><br> 1. Review of Resident #2's Quarterly Minimum Data Set (MDS), dated 04/29/15, revealed he/she was assessed as having an unstageable pressure ulcer. Review of the Comprehensive Care Plan, dated 02/10/15, and revised on 05/21/15 revealed an assessment for potential for impaired skin integrity was listed. One goal was for the resident to have no breakdown in skin from pressure or stasis. Another goal was for the rash from Sweets Syndrome to resolve through the next review. Review of the wound assessment report, dated 04/22/15, revealed a white blister was identified on the left heel. Review of the wound assessment report, dated 04/24/15, revealed the left heel had necrotic tissue (unstageable) pressure ulcer. Review of the care plan, dated 05/21/15, revealed a new problem for a pressure ulcer had not been addressed. <br><br> 2. Review of the Annual MDS, dated 04/03/15, for Resident #4 revealed a Stage two (2) pressure sore was identified on Section M, skin conditions. Review of the wound assessment report for Resident #4, dated 04/07/15, revealed | F 279 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 185456 | A. BUILDING _____<br>B. WING _____ | | C<br>06/05/2015 |

NAME OF PROVIDER OR SUPPLIER

DIVERSICARE OF SENECA PLACE

STREET ADDRESS, CITY, STATE, ZIP CODE

3526 DUTCHMANS LANE
LOUISVILLE, KY  40205

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 279 | Continued From page 2<br><br>a Stage 2 pressure ulcer was identified on the sacrum on 03/25/15.<br><br>Review of Resident #4's Comprehensive Care Plan, dated 10/15/14 and revised on 04/09/15, revealed the care plan had a problem for potential for impaired skin integrity and the goal was to maintain intact skin integrity. An intervention was added on 03/27/15 to cleanse the sacral wound with normal saline and apply silver alginate and a colloid dressing; however, no new problem was added to the comprehensive care plan to reflect the newly identified pressure ulcer.<br><br>Interview with the Minimum Data Set (MDS) Coordinator, on 06/05/15 at 9:00 AM, revealed Resident #2 and Resident #4 should have care plan problems to address actual impairment of skin integrity that included goals and interventions. Review of the comprehensive care plan by the MDS Coordinator revealed there were no problems of actual skin impairment on the care plans. The Coordinator stated the MDS Coordinators were the people responsible for updating the care plan to reflect an actual open area. The nurses on the unit updated the care plans with the treatments as they were changed. | F 279 | | |
| F 309<br>SS=D | 483.25 PROVIDE CARE/SERVICES FOR HIGHEST WELL BEING<br><br>Each resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care. | F 309 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 185456 | A. BUILDING _____<br>B. WING _____ | C<br>06/05/2015 |

NAME OF PROVIDER OR SUPPLIER

DIVERSICARE OF SENECA PLACE

STREET ADDRESS, CITY, STATE, ZIP CODE

3526 DUTCHMANS LANE
LOUISVILLE, KY 40205

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 3 | F 309 | | |
| | This REQUIREMENT is not met as evidenced by:<br>Based on observation, interview, and record review, it was determined the facility failed to provide adequate pain control for one (1) of seven (7) sampled residents. (Resident #2). The facility staff failed to offer as needed pain medication order by the physician when Resident #2 voiced complaints of pain. The staff further failed to assess for increased pain when the resident developed an unstageable pressure sore.<br><br>The findings included:<br><br>Review of the facility's Pain Management and Assessment policy and procedure, dated 08/01/12, revealed residents would be evaluated for pain on admission, quarterly, with a significant change in condition, the day of discharge and any new complaints of pain. A pain evaluation would be done with a standardized format using verbal, nonverbal and observation for proper scoring. Pain management would be added to the care plan addressing the type of pain, therapy/medications regimens and non-pharmacological interventions. Documentation would be included on the resident's pain management flow sheet. Review further revealed incident pain was pain that was typically predictable and was related to a precipitating event such as movement and wound care.<br><br>Review of Resident #2's clinical record revealed the facility admitted the resident on 01/31/13 with | | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 185456 | A. BUILDING _____ <br> B. WING _____ | | C <br> 06/05/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| DIVERSICARE OF SENECA PLACE | 3526 DUTCHMANS LANE <br> LOUISVILLE, KY 40205 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 4 <br><br> diagnoses of Multiple Sclerosis, Sweets Syndrome, Muscle Weakness, Dementia and Osteoporosis. <br><br> Review of the Quarterly Minimum Data Set (MDS), dated 04/29/15, revealed the resident had a Brief Interview for Mental Status (BIMS) of five (5) which meant the resident was not interviewable.  Review further revealed facility assessed Resident #2 with an unstageable pressure area and there were no indications that Resident #2 had experienced pain. However, the Medication Administration Record (MAR) for April 2015 revealed the resident had expressed pain on 04/26/15. Review of the wound assessment revealed a blister on the left heel was first identified on 04/22/15.  The wound assessment for 04/24/15 revealed the left heel had a necrotic unstageable pressure ulcer. <br><br> Review of the April 2015 MAR revealed Tylenol Extra Strength five hundred (500) milligram (mg.) was to be given once a day at 8:00 AM for general discomfort/pain.  Review revealed Tylenol Extra Strength 500 mg. one tablet to be given every four hours as needed for mild pain was ordered. Review of the MAR revealed no as needed Tylenol had been given. However, the resident had expressed pain on five different days, 04/01/15, 04/11/15, 04/12/15, 04/26/15, and 04/29/15 in the afternoon. Review of the Treatment Administration Record (TAR)for April 2015 revealed a treatment had been obtained for the right heel on 04/24/15 and it was to be done at 2:30 PM. A new order was obtained on 05/09/15 which revealed the treatment was to be done twice a day. <br><br> Review of the May 2015 MAR revealed the | F 309 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 185456 | A. BUILDING _____ B. WING _____ | | C 06/05/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| DIVERSICARE OF SENECA PLACE | 3526 DUTCHMANS LANE LOUISVILLE, KY 40205 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 5 | F 309 | | |
| | resident continued with the routine Tylenol and the as needed Tylenol. Review also revealed the resident had received the as needed Tylenol on 050/27/15 at 8:42 PM and 05/31/15 at 5:52 PM. Review of the MAR revealed the resident had expressed pain on five days, 05/04/15, 05/05/15 at 2:30 PM, 05/15/15 at 2:30 PM, 05/19/15 at 10:30 PM and 05/29/15 at 2:30 PM.; however, there was no evidence the as needed Tylenol had been given. | | | |
| | Review of the June 2015 MAR revealed Resident #2 continued to receive Tylenol Extra Strength routinely and Tylenol as needed. An order, dated 06/01/15, for Ultram fifty (50) mg. was to be given three times a day as needed was obtained. The MAR revealed the resident received one dose on 06/01/15, two doses on 06/02/15 and one dose on 06/03/15. On 06/03/15 an order was obtained for Tramadol 50 mg. three times a day routinely. One tab was to be given one half hour before wound dressing changes at 6:00 AM and 2:00 PM and one tab at 8:00 PM. Review of the MAR revealed the resident expressed pain on 06/02/15, 06/03/15, and 06/04/15 at 2:30 PM. | | | |
| | Observation of Resident #2, on 06/04/15 at 1:50 PM, revealed LPN #4 was doing the treatment to the left heel and during that treatment the resident was grimacing and moving. At one point the resident yelled out, stop doing that. Interview with LPN #4 revealed Tramadol had been given to the resident prior to the treatment. Observation further revealed the resident continued to express pain even though Tramadol and the routine Tylenol had been administered prior to treatment. | | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | | A. BUILDING _____ | | C |
| | 185456 | B. WING _____ | | 06/05/2015 |

NAME OF PROVIDER OR SUPPLIER

DIVERSICARE OF SENECA PLACE

STREET ADDRESS, CITY, STATE, ZIP CODE

3526 DUTCHMANS LANE
LOUISVILLE, KY 40205

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 309 | Continued From page 6 | F 309 | | |
| | Interview with the Director of Nursing (DON), on 06/05/15 at 11:30 AM, revealed Resident #2 did not receive the as needed Tylenol for pain in April and May, even though it was ordered, and the resident expressed pain. | | | |
| F 314 SS=D | 483.25(c) TREATMENT/SVCS TO PREVENT/HEAL PRESSURE SORES | F 314 | | |
| | Based on the comprehensive assessment of a resident, the facility must ensure that a resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical condition demonstrates that they were unavoidable; and a resident having pressure sores receives necessary treatment and services to promote healing, prevent infection and prevent new sores from developing. | | | |
| | This REQUIREMENT is not met as evidenced by: Based on observation, interview, record review, and policy review, it was determined the facility failed to ensure that one (1) of seven (7) sampled residents, (Resident #2) received necessary treatment and services to promote healing. The facility assessed Resident #2 as having a blister area on the left heel on 04/22/15. Two days later the area was noted as being an unstageable pressure ulcer. | | | |
| | The findings included: | | | |
| | Review of the facility's Care System Guideline policy, not dated, for skin care revealed when an open area was identified a care plan should be initiated and individual interventions for each problem should be established. The policy further | | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 185456 | A. BUILDING _____<br>B. WING _____ | | C<br>06/05/2015 |

NAME OF PROVIDER OR SUPPLIER

DIVERSICARE OF SENECA PLACE

STREET ADDRESS, CITY, STATE, ZIP CODE

3526 DUTCHMANS LANE
LOUISVILLE, KY 40205

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 314 | Continued From page 7 | F 314 | | |
| | revealed resident specific interventions should be implemented immediately, including treatments as ordered. | | | |
| | Review of the clinical record for Resident #2 revealed the facility admitted the resident on 01/31/13 with diagnoses of Multiple Sclerosis, Sweets Syndrome, Muscle Weakness, Dementia and Osteoporosis. | | | |
| | Review of the Annual Minimum Data Set (MDS), dated 02/05/15, revealed the facility assessed Resident #2 as not having any pressure ulcer. Review of the Quarterly MDS, dated 04/29/15, revealed the resident had developed an unstageable pressure ulcer to the left heel. Review of the comprehensive care plan, revised on 05/21/15, revealed the facility assessed the resident as being at risk for skin breakdown, but no care plan had been initiated for an actual pressure sore that was identified on 04/22/15. | | | |
| | Review of the Departmental Notes, dated 04/22/15, revealed the resident had developed a 5 centimeter (cm) x 2 cm white fluid-filled blister to the bottom of the left heel. The resident's heels were to be off the cushion and no shoes or socks were to be used until evaluated by the wound nurse. The family and MD were notified. However, the Resident Incident Report, dated 04/22/15, revealed the physician was called at 10:00 PM, but there was no time as to when the physician responded. There was no documentation that a treatment order had been obtained. However the wound nurse was to be consulted. It was documented the family was notified, on 04/22/15 at 10:10 PM, and they responded at 10:10 PM. Developmental Notes for 04/23/05 revealed no shoes had been worn that | | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 185456 | A. BUILDING _____ <br> B. WING _____ | | C <br> 06/05/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| DIVERSICARE OF SENECA PLACE | 3526 DUTCHMANS LANE <br> LOUISVILLE, KY 40205 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 314 | Continued From page 8 <br> day secondary to a fluid filled blister and they were awaiting the wound nurse consult. <br><br> Review of the Wound Assessment Report, dated 04/22/15, completed by the nurse on the hall, revealed a 5 cm x 2 cm white blister was assessed on the left bottom heel. Review of the Wound Assessment Report, dated 04/24/15, done two days later by the Assistant Director of Nursing (ADON)/Wound Nurse, revealed the pressure ulcer to the left bottom of heel was now unstageable due to suspected deep tissue injury and the dimensions were 3 cm x 7 cm. The notes portion of the assessment revealed the left heel was a necrotic tissue (unstageable) pressure ulcer and had received a status of not healed. The house wound physician was notified on 04/24/15 and a treatment was obtained. The treatment portion of the assessment revealed the right heel was to be cleansed with saline and covered liberally with Bactroban two (2) percent (%) and wrapped twice a day. However, review of the wound key revealed the left heel was the affected heel, not the right. Review of the April 2015 TAR revealed the treatment order continued to be to the right heel. However, on the May 2015 TAR the treatment had been corrected to reflect the left heel. <br><br> Review of the May TAR revealed an order for Bactroban ointment was to be continued on 05/01/15 and was to be applied to the left heel twice a day and it was to be covered with a dry gauze. The treatment was to be done at 2:30 PM and 10:30 PM. Review of the May TAR revealed a new order for Santyl ointment was obtained on 05/09/15. The May TAR continued to revealed the left heel was to be cleansed with normal saline and Santyl was to be applied to the wound base. | F 314 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 185456 | A. BUILDING _____  B. WING _____ | | C 06/05/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| DIVERSICARE OF SENECA PLACE | 3526 DUTCHMANS LANE  LOUISVILLE, KY 40205 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 314 | Continued From page 9 | F 314 | | |
| | The wound was to be covered with a normal saline wet gauze and secured with kerlix and it was to be done twice a day. Review of the TAR revealed the treatment was completed at 2:30 PM. and 10:30 PM.  Review of the TAR revealed another order was obtained on May 23, 2015 to clean the left heel with normal saline and apply Betadine moist gauze/wrap with a kerlix and change twice a day. | | | |
| | Review of the wound assessment, dated 05/22/15, revealed the pressure ulcer had deteriorated. The wound had a light amount of fresh blood drainage noted with no odor. The wound bed was 75% moist, black eschar, 25% adherent, yellow slough with granulation. Review of the departmental notes for 05/29/15 revealed the resident was sent to the emergency room due to the left heel being necrotic and cellulitic. The resident was transported back to the facility and was to go to the wound care center for evaluation. | | | |
| | Observation of Resident #2, on 06/04/15 at 1:15 PM, revealed the resident was sitting up in the high back wheelchair with a padded foot on the legs of the wheelchair and a blue boot on the left foot. The resident was unable to say his/her name. Observation of Resident #2, on 06/04/15 at 1:50 PM, revealed LPN #4 was doing the treatment to the left heel and during that treatment the resident was grimacing and moving. At one point the resident yelled out, stop doing that.  Interview with LPN #4 revealed Tramadol had been given to the resident prior to the treatment.  Observation further revealed the resident continued to express pain even though the Tramadol and the routine Tylenol had been | | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|---|
| | 185456 | A. BUILDING _____<br>B. WING _____ | | C<br>06/05/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| DIVERSICARE OF SENECA PLACE | 3526 DUTCHMANS LANE<br>LOUISVILLE, KY 40205 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 314 | Continued From page 10<br>administered prior to treatment.<br><br>Interview with the Certified Nursing Assistant (CNA) #3, on 06/04/15 at 2:35 PM, revealed she had taken care of the resident numerous times. The CNA stated she had noticed a flaky area on the left heel somewhere around the end of March or the first part of April and reported it to the nurse. The resident started utilizing a boot at that time. The CNA stated the area turned into a purplish red blister.<br><br>Interview with the DON, on 06/05/15 at 11:45 AM, revealed it was reported to the nurse on 04/22/15 that the resident had a blister on his/her left heel. The resident was assessed for the blister and the physician and the Wound Nurse were notified on 04/22/15. The Wound Nurse saw the resident on 04/24/15 and the wound physician was notified. A treatment was obtained at this time to cleanse the left heel with saline and apply Bactroban twice a day and wrap. The DON stated she did not see where a treatment had been ordered previously until the wound physician ordered a treatment. The DON revealed the resident had Sweets Syndrome and got lots of wounds and blisters as his/her skin was fragile.  The DON stated the resident may have scooted their feet and caused friction and the pressure ulcer did worsen substantially between 04/22/15 and 05/28/15.<br><br>Review of the wound assessment, dated 04/24/15, revealed the wound to the left heel went from a white blister on 04/22/15 to a necrotic tissue (unstageable) pressure ulcer on 04/24/15. No treatment was obtained until 04/24/15 when the wound nurse contacted the wound physician. | F 314 | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 185456 | A. BUILDING _____<br>B. WING _____ | C<br>06/05/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| DIVERSICARE OF SENECA PLACE | 3526 DUTCHMANS LANE<br>LOUISVILLE, KY 40205 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 441<br>F 441<br>SS=D | Continued From page 11<br>483.65 INFECTION CONTROL, PREVENT SPREAD, LINENS | F 441<br>F 441 | | |
| | The facility must establish and maintain an Infection Control Program designed to provide a safe, sanitary and comfortable environment and to help prevent the development and transmission of disease and infection. | | | |
| | (a) Infection Control Program<br>The facility must establish an Infection Control Program under which it -<br>(1) Investigates, controls, and prevents infections in the facility;<br>(2) Decides what procedures, such as isolation, should be applied to an individual resident; and<br>(3) Maintains a record of incidents and corrective actions related to infections. | | | |
| | (b) Preventing Spread of Infection<br>(1) When the Infection Control Program determines that a resident needs isolation to prevent the spread of infection, the facility must isolate the resident.<br>(2) The facility must prohibit employees with a communicable disease or infected skin lesions from direct contact with residents or their food, if direct contact will transmit the disease.<br>(3) The facility must require staff to wash their hands after each direct resident contact for which hand washing is indicated by accepted professional practice. | | | |
| | (c) Linens<br>Personnel must handle, store, process and transport linens so as to prevent the spread of infection. | | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 185456 | (X2) MULTIPLE CONSTRUCTION A. BUILDING _____ B. WING _____ | (X3) DATE SURVEY COMPLETED C 06/05/2015 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| DIVERSICARE OF SENECA PLACE | 3526 DUTCHMANS LANE LOUISVILLE, KY 40205 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 441 | Continued From page 12 | F 441 | | |
| | This REQUIREMENT is not met as evidenced by: | | | |
| | Based on observation, interview, record review, and policy review, it was determined the facility failed to maintain infection control practices for one (1) of one (1) unsampled residents, (Unsampled Resident A). During the wound treatment for Resident #2 the nurse dropped a towel on the floor that had been under the resident's heel. The nurse then scooted the towel across the floor with his foot to the bathroom and put it in a plastic bag. During the wound treatment for Unsampled Resident A, the nurse did not change gloves when going from one wound site to another. | | | |
| | The findings included: | | | |
| | Review of the facility's Infection Control Policy and Procedures, dated August 2014, revealed the objectives were to maintain a safe and sanitary environment for personnel and residents. Review of the policy and procedure Wound Care Manual, dated 03/01/13, for a dressing change revealed the staff were to wash their hands and apply gloves prior to the treatment. After the soiled dressing was changed the staff should remove the soiled gloves and wash their hands. New gloves were to be applied before application of the new dressing. | | | |
| | Review of Resident #2's physician orders revealed the wound to the left heel was to be cleaned with normal saline and then a Betadine moist gauze was to be applied. The wound was to | | | |

FORM CMS-2567(02-99) Previous Versions Obsolete          Event ID: HJMN11          Facility ID: 100256          If continuation sheet Page 13 of 15

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 185456 | A. BUILDING _____<br>B. WING _____ | C<br>06/05/2015 |

| NAME OF PROVIDER OR SUPPLIER | STREET ADDRESS, CITY, STATE, ZIP CODE |
|---|---|
| DIVERSICARE OF SENECA PLACE | 3526 DUTCHMANS LANE<br>LOUISVILLE, KY 40205 |

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 441 | Continued From page 13<br>be wrapped with Kerlix. | F 441 | | |
| | Observation, on 06/04/15 at 2:05 PM, of Resident #2 revealed LPN #4 had placed a towel under the residents heel prior to doing the wound treatment. Observation during the wound treatment revealed the heel was in contact with the towel and the solution used in the treatment had drained on the towel. Upon completion of the treatment the nurse removed the towel and threw it on the floor. The nurse took his foot and scooted the towel on the floor, into the bathroom, where he picked it up and put it in the plastic container. | | | |
| | Interview with the LPN #4, on 06/04/15 at 2:30 PM, revealed the floor was the dirtiest part of the room and the only other option was to put the towel on the bedside table. | | | |
| | Interview with the Assistant Director of Nursing (ADON), on 06/05/15 at 2:32 PM, revealed putting the towel on the floor imposed infection control problems. If a bug was in the wound it would be introduced to the floor and increase the risk for infection to others. He stated it was not proper to scoot the towel across the floor. | | | |
| | Interview with the Director of Nursing (DON), on 06/05/15 at 11:35 AM, revealed the towel should have been bagged in dirty linens. She further stated it was not proper technique to throw the dirty towel on the floor. | | | |
| | Observation of Unsampled Resident A, on 06/05/15 at 10:20 AM, during the wound treatment, revealed LPN #3 had applied gloves to remove the dressing from the left foot. After partially removing the dressing the nurse touched her keys and scissors and went out of the room | | | |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR MEDICARE & MEDICAID SERVICES

PRINTED: 06/17/2015
FORM APPROVED
OMB NO. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: | (X2) MULTIPLE CONSTRUCTION | (X3) DATE SURVEY COMPLETED |
|---|---|---|---|
| | 185456 | A. BUILDING _____<br>B. WING _____ | C<br>06/05/2015 |

NAME OF PROVIDER OR SUPPLIER

DIVERSICARE OF SENECA PLACE

STREET ADDRESS, CITY, STATE, ZIP CODE

3526 DUTCHMANS LANE
LOUISVILLE, KY 40205

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (EACH DEFICIENCY MUST BE PRECEDED BY FULL REGULATORY OR LSC IDENTIFYING INFORMATION) | ID PREFIX TAG | PROVIDER'S PLAN OF CORRECTION (EACH CORRECTIVE ACTION SHOULD BE CROSS-REFERENCED TO THE APPROPRIATE DEFICIENCY) | (X5) COMPLETION DATE |
|---|---|---|---|---|
| F 441 | Continued From page 14 | F 441 | | |
| | to the treatment cart and got a new gauze. The nurse came back into the room and took the gauze off the wound and put it in the gloved hand and threw it away. The nurse helped the Certified Nursing Assistant (CNA) transfer the resident to the bed with the help of a lift. The nurse went out of the room without washing her hands. The nurse went to the medicine cart and placed a pain pill into a cup for Unsampled Resident A. The nurse used sanitizer on her hands after putting the medication into the cup. The nurse went back to the room and gave the resident the medication and proceeded to do the treatment. She put gloves on and soaked the left knee in warm water. The nurse unwrapped the gauze to a different wound on the left foot and threw the old bandage into the garbage can. The nurse applied normal saline to the gauze on the wound to loosen it. The nurse then removed the bandage to the left foot without changing gloves or washing her hands. The nurse applied a Hibiclens soak to the left knee without changing gloves.  Interview with the nurse, on 06/05/15 at 10:45 AM, revealed she had forgotten to change the gloves and that put the resident at risk for contamination from one wound to the other. | | | |
| | Interview with the DON, on 06/05/15 at 11:35 AM, revealed the proper technique for changing a dressing was to wash your hands, put on gloves, remove the dressing and discard it. The DON stated the staff should change gloves before they go to another wound and wash their hands. She further stated it was a risk for infection to go to the medication cart without washing your hands or sanitizing them before getting medication from the cart. | | | |